NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GLENN GUNSET, :
 : Civil Action No. 12-4735 (DMC)
       Plaintiff, :
 :
  v. : **OPINION**
 :
LIEUTENANT JERRY MARSH, :
et al., :
 :
       Defendants. :

APPEARANCES:

Plaintiff pro se
Glenn Gunset
Northern State Prison
Newark, NJ  07114

**CAVANAUGH**, District Judge

   Plaintiff Glenn Gunset, a prisoner confined at Northern State Prison in Newark, New Jersey, has submitted a Complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.

   This Court previously has granted Plaintiff leave to proceed in forma pauperis and has performed the review required by 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether the Complaint should be dismissed for failure to state a claim. By Opinion and Order [2, 3] entered in August 2012, this Court dismissed certain claims for failure to state a claim, and ordered Plaintiff to show cause why all remaining claims should not be dismissed as

time barred. In response, Plaintiff asserts that he is entitled to equitable tolling on the grounds of physical and mental health problems.

## I. BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on the evening of June 21 to 22, 2010, the Defendant police officers William Macrae and Sgt. Gary Blumenthal were dispatched to Plaintiff's residence on report of a smoke or carbon-monoxide alarm, called in by Joseph Farinelli. Plaintiff alleges that Officer Macrae and Sgt. Blumenthal entered his property and conducted a search of the premises. Plaintiff alleges that after the search, Sgt. Blumenthal contacted Defendant Fire Chief Gregory Goodell, Sr., who came to the premises and determined that forced entry of the residence was necessary without any notice to the owner. Plaintiff alleges that Fire Chief Goodell, Sr., instructed his son Defendant Gregory Goodell, Jr., to gain entry to the residence through a window and to conduct a search of the interior of the home. Plaintiff alleges that, when that search was completed, Mr. Goodell, Jr., unlocked the residence door for the Fire Department. Plaintiff alleges that after a further search of the premises, Defendant Goodell, Jr., and Defendant firefighter Lt.

Jerry Marsh conducted a further search of Plaintiff's personal property that was sealed within the premises.

Plaintiff alleges that at the conclusion of the search, Defendant Detectives John Devoe and Peter Martin arrived at Plaintiff's residence, prevented him from returning to his residence, and questioned him without giving him any Miranda warnings. Plaintiff alleges that he was thereafter directed to proceed by his own vehicle to the River Vale police department, where Defendant Sgt. John Devoe continued to question him while denying him leave to consult with counsel, as Plaintiff had asked to do.

Plaintiff alleges that the defendants violated his Fourth Amendment right to be free from unreasonable searches, his Fifth and Fourteenth Amendment rights not to be deprived of life, liberty, or property without due process, and his Sixth Amendment right to have the assistance of counsel for his defense.[1]

This Court has previously dismissed all claims against Mr. Farinelli and all claims based upon alleged irregularities during interrogation, including claims based upon the alleged failure to

---

[1] Plaintiff alleges that he was charged with various drug offenses as a result of this evening's activities and that he pleaded guilty to one count of manufacturing-distributing-dispensing a controlled dangerous substance contrary to N.J.S.A. 2C:35-5A(1), resulting in a sentence of five years incarceration, pursuant to which he is presently confined.

provide <u>Miranda</u> warnings or to permit Plaintiff to consult with an attorney.

## II. ANALYSIS

Plaintiff alleges that the events complained of took place on the evening of June 21 through 22, 2010. The Complaint, dated July 18, 2012, is accompanied by a cover letter dated July 24, 2012. Thus, the earliest date that the Complaint could be deemed filed is July 24, 2012.[2]

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." <u>Bethel v. Jendoco Construction Corp.</u>, 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted). Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss <u>sua sponte</u> under 28 U.S.C. § 1915(e)(2) a <u>pro se</u> civil rights claim whose untimeliness is apparent from the face of the Complaint. <u>See</u>, <u>e.g.</u>, <u>Jones v. Bock</u>, 549 U.S. 199, 214-15 (2007) (if the allegations of a complaint, "for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim").

---

[2] Typically, a prisoner's complaint is deemed filed at the moment he delivers it to prison officials for mailing to the district court. <u>See</u> <u>Burns v. Morton</u>, 134 F.3d 109 (3d Cir. 1998) (citing <u>Houston v. Lack</u>, 487 U.S. 2676 (1988)); <u>see also</u> <u>Rivers v. Horn</u>, 2001 WL 312236 *1, n.1 (E.D. Pa. March 29, 2001).

4

See also <u>Pino v. Ryan</u>, 49 F.3d 51, 53 (2d Cir. 1995) (holding, under former § 1915(d) <u>in forma pauperis</u> provisions, that <u>sua sponte</u> dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); <u>Hunterson v. DiSabato</u>, 2007 WL 1771315 (3d Cir. 2007) ("district court may <u>sua sponte</u> dismiss a claim as time barred under 28 U.S.C. § 1915A(b)(1) where it is apparent from the complaint that the applicable limitations period has run") (citing <u>Jones v. Bock, Pino v. Ryan</u>) (not precedential); <u>Hall v. Geary County Bd. of County Comm'rs</u>, 2001 WL 694082 (10th Cir. June 12, 2001) (unpub.) (applying <u>Pino</u> to current § 1915(e)); <u>Rounds v. Baker</u>, 141 F.3d 1170 (8th Cir. 1998) (unpub.); <u>Johnstone v. United States</u>, 980 F.Supp. 148 (E.D. Pa. 1997) (applying <u>Pino</u> to current § 1915(e)). The requirements of 28 U.S.C. § 1915A (governing civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity) and 42 U.S.C. § 1997e (governing actions brought with respect to prison conditions), that federal courts review and dismiss any complaint that fails to state a claim, parallel the provision in 28 U.S.C. § 1915(e).

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is <u>not</u> resolved by reference to state law." <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007) (emphasis in original).

A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of his action." Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir. 1982). See also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994). "Plaintiff'S actual knowledge is irrelevant. Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable. Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." Fassnacht v. United States, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996) (citing Oshiver, 38 F.3d at 1386).

Civil rights claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions. See Wilson v. Garcia, 471 U.S. 261, 280 (1985). Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Plaintiff's claims. See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989). Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. Cito, 892 F.2d at 25; accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987).

Unless their full application would defeat the goals of the federal statute at issue, courts should not unravel states' interrelated limitations provisions regarding tolling, revival, and questions of application. <u>Wilson v. Garcia</u>, 471 U.S. at 269.

New Jersey law permits tolling in very narrow circumstances. For example, N.J.S.A. § 2A:14-21 provides:

> If any person entitled to any of the actions or proceedings specified in [N.J.S.A. 2A:14-2] is or shall be, <u>at the time of any such cause of action ... accruing</u>, ... insane, such person may commence such action ..., within such time as limited by [N.J.S.A. 2A:14-2], after his coming to or being of ... sane mind.

(Emphasis added.) New Jersey also permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. <u>See</u> <u>Freeman v. State</u>, 347 N.J. Super. 11, 31 (citations omitted), <u>certif. denied</u>, 172 N.J. 178 (2002). "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." <u>Id.</u>

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine. See Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000). Under federal law, equitable tolling is appropriate in three general scenarios:

> (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum.

Id. n.9. The Court of Appeals for the Third Circuit has held that "equitable tolling is extraordinary, and we extend it 'only sparingly.'" Santos v. United States, 559 F.3d 189, 197 (3d Cir. 2009) (citations omitted). See generally Lee v. Overton, Civil Action No. 10-4283, 2013 WL 159528 (E.D. Pa. Jan. 15, 2013) (collecting cases applying Lake and denying equitable tolling).

Here, according to the allegations of his Complaint, Plaintiff's claims against all defendants accrued no later than June 22, 2010.[3] The Complaint could be deemed filed no earlier than July 24, 2012, 32 days after the two-year limitations period expired.

---

[3] In his response, Plaintiff does not dispute that his claims accrued on June 22, 2010. To clarify, as there is no suggestion that a favorable outcome on Plaintiff's remaining Fourth Amendment claim would invalidate his conviction through guilty plea on drug charges, this Court finds that Plaintiff's claim accrued on June 22, 2010, and the limitations period began to run on that date. See Heck v. Humphrey, 512 U.S. 477, 487 n.7 (1994).

8

In response to this Court's order to show cause why all claims not otherwise dismissed should not be dismissed as untimely, Plaintiff argues through counsel that his various physical and mental health problems, exacerbated by his confinement, constitute "extraordinary circumstances" entitling him to equitable tolling under both New Jersey and federal law. In support of this contention, Plaintiff attaches to his response an affidavit from his former cellmate Earl Peoples (who assisted him in preparing the Complaint), copies of two short prison medical records, and a one-page educational test report dated March 2012.

Mr. Peoples's affidavit reads as follows, in its entirety:

### Affidavit of Earl Peoples

I, Earl Peoples ... hereby swear under penalty of perjury as follows

1. I was the cellmate of Glenn Gunset @ Northern State Prison beginning in the fall of 2011 and continuing until the first week of July, 2012.

2. Beginning in January 2012, I began assisting Glenn in preparing a complaint (the instant complaint in this matter). My training is as a paralegal (I received my paralegal certificate at Northern State Prison in 2006) but I have no legal training.

3. Glenn Gunset is illiterate as he is unable to read beyond a child's level and he cannot functionally write. I know this from my many months as his cellmate.

4. During the preparation of the complaint, I discussed w/ Glenn the substantive law, legal procedures, filing requirements, and statutes of

      limitations as I understood them. Glenn had no understanding of the law beyond what I told him.

5. Based upon my conversations with Glenn, I drafted the complaint in June, 2012 while Glenn was still my cellmate. It was completed in June, 2012 before Glenn was transferred to the "Camp" section of the prison. Glenn approved its contents and I told him I would type it, have it copied and then file and serve it for him.

6. I assembled the necessary proofs of indigency for Glenn so that he could file his complaint in forma pauperis beginning in May, 2012.

7. On or about July 10, 2012 I put a slip request in for law library time to make the required copies of the complaint. On July 17, 2012 I was called and made the required copies of the complaint. (See attached receipt.)

8. On July 18, 2012 I was prepared to submit the Complaint but legal mail pickup did not come. I was not able to submit the complaint u8ntil July 25, 2012 when it was picked up by the prison. (See attached receipt.)

9. I was the only person who could submit the papers for Glenn and I had the only copy of the complaint from late June, 2012 until it was submitted on July 25, 2012. Because of his illiteracy, Glenn had no ability to file the Complaint without me.

    I have read the above affidavit and all the facts and statements are true based upon my own personal knowledge.

                    /s/ Mr. Earl Peoples

Sworn to before me
September 12, 2012
/s/ Samuel M. Braverman
An Attorney At Law of New Jersey

Response to Order to Show Cause, Docket Entry No. 11, Unnumbered

Ex. 1.

As an initial matter, the Court notes that Plaintiff does not argue that his mental health problems amounted to "insanity" at the time this cause of action accrued, within the meaning of N.J.S.A. 2A:14-21, nor would such an argument have any merit. Plaintiff has presented this Court with <u>no</u> evidence as to the state of his mental health at the time this cause of action accrued, a necessary predicate to a finding that the "insanity" tolling provision applies. Moreover, the Supreme Court of New Jersey has held that, to be insane within the meaning of N.J.S.A. 2A:14-21, a person must suffer from "such a condition of mental derangement as actually prevents the sufferer from understanding his legal rights or instituting legal action." <u>Kyle v. Green Acres at Verona, Inc.</u>, 44 N.J. 100, 113 (1965). Contrary to these standards, the facts alleged suggest that Plaintiff was competent, during the limitations period, to enter a guilty plea to a felony charge of manufacturing-distributing-dispensing a controlled dangerous substance contrary to N.J.S.A. 2C:35-5A(1). In addition, Mr. Peoples states in his affidavit that he explained to Plaintiff the legal basis for the claims asserted in this Complaint and received Plaintiff's approval of the draft Complaint. Thus, there is no evidence before this Court to satisfy the statutory "insanity" tolling provision.

Instead, Plaintiff contends that a combination of factors constitute "extraordinary circumstances" entitling him to

11

equitable tolling. Regarding Plaintiff's reading and comprehension level, he states in his Complaint that he has a fifth-grade reading level. (Complaint, Prayer for Relief.) Although Plaintiff attached to his Response to the Order to Show Cause a one-page "Test Report," apparently a report of some type of educational test, he includes no explanation of the scores on the report or of their implications with respect to his everyday intellectual functioning.

Regarding Plaintiff's other mental and physical health complaints, he has provided a two-page Northern State Prison "Chart Summary" dated January 30, 2012, and a partial "Chart Document" from the Central Reception & Assignment Facility ("CRAF") dated October 26, 2011. The CRAF Chart Document, prepared shortly after Plaintiff was sentenced and remanded to state prison,[4] reflects that Plaintiff is diagnosed with "Depressive Disorder [Not Otherwise Specified], <u>provisional, as evidenced by self report</u> via Basis 24 of depressed mood, sleep problems, difficulty managing day to day events, problems with concentration, mood swings, and racing thoughts." (Emphasis added.) The CRAF Chart Document is unsigned and provides for further followup in order to assess Plaintiff's functioning and

---

[4] The New Jersey Department of Corrections Inmate Locator reflects that Plaintiff was sentenced on September 16, 2011, on which date he was admitted to the custody of the Department of Corrections. <u>See</u> https://www6.state.nj.us/DOC_Inmate/details?x=1465745&n=0 .

12

fully diagnose his mental health. Thus, it does little, if anything, to credibly establish Plaintiff's state of mental health and intellectual functioning. The January 30, 2012, Northern State Prison ("NSP") Chart Summary is only marginally more informative. The Chart Summary lists the following "problems": mitral valve replacement in 1997, repair of umbilical hernia, history of atrial fibrillation, hyperlipidemia, hypertension, left shoulder lipoma, a provisional diagnosis of depressive disorder not otherwise specified, report of anxiety, alcohol-induced persisting dementia, cannabis abuse in remission, alcohol dependence in remission, history of congestive heart failure secondary to mitral valve prolapse, history of opioid dependence, presbyopia, and cataracts. The Chart Summary reflects prescriptions for hypertension and heart disease problems, constipation, and allergy, as well as a prescription for the pain reliever acetaminophen. The Chart Summary does not reflect any prescription for depression or other mental health problem. The Chart Summary does not expound upon the reference to alcohol-induced persisting dementia; there is no information as to the scope of the alleged "dementia." The Chart Summary does not identify the author or mental health professional who prepared it, nor does it identify the bases for the various "problems" described, that is, whether the references to those problems are based upon Plaintiff's self-reports or observed

behaviors, examinations, tests, etc. The Chart Summary contains a "Mental Health Special Needs" directive, but reflects no plan for treatment or services.

Considered in their entirety, the various problems described by Plaintiff, and the meager supporting evidence, are not sufficient to demonstrate "extraordinary" circumstances justifying tolling of the limitations period. The affiant Mr. Peoples states that Plaintiff was illiterate, but Plaintiff stated in his Complaint that he had a fifth-grade reading level. Mr. Peoples does not suggest in his affidavit that Plaintiff was unable to understand Mr. Peoples's explanations to him of his legal rights. To the contrary, Mr. Peoples states that Plaintiff authorized Mr. Peoples to assist him in bringing suit.

Plaintiff states that he suffers from depression, which causes him to sleep for days at a time, but the medical evidence of such depression is minimal, some of it based on self-reports only, and reflects no medication or other psychological treatment plan. Similarly, the evidence of dementia consists solely of a single reference in an unattributed prison medical record, again without any reflection of the method of diagnosis, scope of mental deficit, or treatment plan. There is no suggestion that Plaintiff has not been able to function in prison as a member of the general population; indeed, the affidavit of Mr. Peoples, Plaintiff's cellmate, suggests otherwise.

14

Instead of delay based upon illiteracy or mental illness, it is clear that Plaintiff and Mr. Peoples simply failed to correctly calculate the limitations period and to timely file the Complaint. The limitations period expired June 22, 2012. Several months earlier, in January 2012, Mr. Peoples began to assist Plaintiff in drafting the Complaint, collecting proofs of indigency beginning in May 2012. However, the Complaint was not completed until June 2012, and Mr. Peoples did not put in a copying request until July 10, 2012, <u>after</u> the limitations period had expired, and he made no attempt to mail the Complaint until at least July 24, 2012, the date on the cover letter. There is no basis to equitably toll the limitations period.

### III. CONCLUSION

For the reasons set forth above, all remaining claims will be dismissed with prejudice, for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

An appropriate order follows.

_____
Dennis M. Cavanaugh
United States District Judge

Dated: 2/25/13